Robert P. Goh, Counsel for the Appellant, Shad, Paul, Delannoy Howard M. Denach, Counsel for the Appellant, Woodlawn, Colonial, L.P. May it please the Court, Your Honors, Robert Goh on behalf of the debtor, Shad Delannoy. Sir, how much time would you like to reserve for rebuttal? Three minutes. Three minutes. I will note that. Your Honor, I took to heart the comments you made beforehand about hit the high points and I know you guys are well prepared. And this is actually a pretty straightforward issue dealing with a 363 and a 9019 motion. So let me just hit a few things I think compel that the decision of Judge Smith should be overruled. Your Honor, the path granted a stay of the order. I think you find some merit in what we have to say in these briefs. Simply put, here's what happened was the trustee files a combination 363, 9019 motion to sell defensive appellate rights. And in connection with that, they are basically selling for $7,500, the defensive appellate rights. And at that time, they already knew that the fees that they'd incurred to try to sell this already exceeded the amount of the recovery that would be obtained. And in fact, Judge Smith stated numerous times during the hearing, this is going to be a road-launched K-claim. It's in or out. It's a de minimis return. It's a de minimis return. It's a de minimis return. At the end of the day, as we set forth in the fee application submitted by the trustee, this sale resulted in a loss to the bankruptcy estate. Now, what was the effect of the sale? You had the sale for the $7,500. My client, the debtor, who had great interest in proceeding with that appeal, came in and submitted overbids up to $9,500. In connection with that overbid, it's also undisputed in the record that he stated, I will pursue that appeal for free, to no expense to the bankruptcy estate. What did the trustee do? The trustee agreed, and Judge Smith approved a sale for $10,000, a mere $500 more than his bid. But what did that also include? By doing so, it also ratified the amount of a million-dollar claim against the bankruptcy estate, and potentially also saddled my client with a non-dischargeable judgment, because in the pleadings themselves, and this is the point I'll get to in a moment, is the trustee specifically stated that Woodlawn is going to dismiss the appeal, and then attempt to use the appeal to provide for finality of the state court judgment, and saddled the debtor with a non-dischargeable judgment. So in sum... Do you concede that if the appeal is done, that that is it on issue preclusion? No, that's not a final decision yet. We have some... There are arguments, but that was what they intended, in that their own motion, they specifically stated, and Woodlawn went to great lengths in the pleadings and the order of Judge Smith that they could dismiss the appeal, it's going to be final, and that the result of this is going to be that this will be res judicata. That's clearly their position, and the trustee was basically advocating it. You know, I represent trustees, and I can understand their position sometimes, but what they did here was such a sellout for no benefit to the bankruptcy estate. I understand that they need to look out for creditors, and creditors got nothing. There is some duty, I know it's typically in a surplus estate to the debtor, but there is some duty in an equitable situation, not just to basically say, hey, you know what, we don't care. We'll take an extra $500 from this creditor, we're going to ratify a million-dollar claim, and debtor, tough luck if this ends up being res judicata on a non-dischargeable... You mean issue preclusion, right? Excuse me, your honor? You mean issue preclusion? Issue preclusion. But the only thing that affected was finality, right? What's that? That affected finality at the end of the day. It affects finality for the collateral estoppel issues in terms of, if the appeal gets dismissed, because right now, as of the date of the filing, the state court judgment was not final. But you still could argue that it wasn't the same issues, or not the same part, goodness knows what else, right? All that affects is finality. Correct, but it causes great problems. But I think this is the case where, and I don't want to use too much like equitable, but it was just the wrong thing to do, and the wrong thing for the court to approve. Is that a new standard of review for us? Excuse me? Is that a new standard of review? No. Okay. Because under KVN, under the KVN and Kitchen Factors, from BAP's decision, when a trustee goes to liquidate an asset, pursue litigation, you've got to look to see what will be the And they knew that that $7,500 was going to get eaten up completely in administrative claims. I'm not saying the trustee was beholden to this creditor, but this creditor was putting a lot of heat on the trustee and was buying other assets and doing other things. And basically, the trustee blinded herself as to really what was the outcome to the bankruptcy estate and just said, no, I just want to get this deal done with this creditor. If you were successful on appeal, what impact would that have on the estate? Would it still be a de minimis recovery? Well, I think that, I'm going to get to my next point, and I think that our pleadings addressed it, but yes, you'll still have that, but I think that what the outcome should be is that we would renew our motion to compel the abandonment and that the appeal should be abandoned back to the debtor to allow him to proceed, which could have two corresponding benefits. One is, is it could reduce substantially the claims in this bankruptcy estate. I mean, this claim eats up, you know, 95% of all the creditors in this bankruptcy case and it would give him the benefits pursuing an appeal to potentially avoid the collateral estoppel effect of a final judgment in the state court. But it would be de minimis under both circumstances, wouldn't it? I mean, there still isn't going to be a large return to creditors under any way this case comes out, is there? I think that's a fair statement, Your Honor. And so the benefit that the judge identified was simply that it's going to come to a conclusion under this resolution. Right. But that doesn't mean that you had to administer the asset, though. I mean, that's the point. The asset did not need to be administered, especially under these circumstances. Another point I wanted to make, and I think our papers touched on it, but I want to hammer this point home. There's this interesting decision from the unpublished case that we cited to the, let me grab it here. Oh, I think it's right there. The Friedman decision, which talks about where the trustee was trying to settle and where it was going to end up with the same result, and then whereby it could potentially impact the debtor's discharge. And they cite it to Section 524C. And a big deal has been made about this, saying, well, this isn't a reaffirmation agreement and the like, and that doesn't have any applicability here. But I was further reviewing the BAPS decision in CAHO v. COLE 226-BR-647, and I think there's a key provision in there that really requires some close attention. In the CAHO case dealt primarily with whether or not a pre-petition agreement with a creditor stipulated to non-dischargeability would be enforceable in a bankruptcy proceeding, okay, as to whether or not it would be binding for motion for summary judgment on a non-dischargeability action. But in that case there, in the CAHO decision, they really went through a detailed analysis and talked about the post-petition situation and stated there are only two circumstances post-petition where basically a debtor can waive its discharge, and that's under 727A-10 where they can stipulate to the waiver of the discharge, and then of course under 524C as it relates to a reaffirmation agreement. But I think the key language in this case that really I think is important for the panel's consideration is this. On page 654 of the CAHO decision, after discussing pre-petition waivers and how Congress had only set forth two different ways in which a debtor could waive its discharge, and I quote the language here, and I think it's pretty important. It doesn't focus on 524C reaffirmation. It focuses on 524D, your general discharge provisions, and it says, Section 524D have been applied strictly by the courts to carry out their remedial purposes and to assure that they are not evaded by agreements which, though not labeled as reaffirmation, have the effect of waiving the protections of the discharge. And it doesn't seem to focus on the debtor entering into an agreement. It just says any sort of an agreement that is entered that could have the purpose of trying to evade the rights of a debtor to a discharge should not be enforced. So, you know, in sum, your Honor, it's just, you go back to, there was no benefit to the estate to this compromise, but there was all kinds of downside, not only to my client, but also to the creditors. Why would the trustee agree to accept a mere $500 more of an overbid, and at the same time could have the adverse impact upon my client with regard to the non-dischargeability action, which I think is an area that really could use, we haven't been able to find any cases, I don't think the opposing counsel will find any cases on this issue, but there's cases that are around this issue that say that actions or agreements that have the impact upon a debtor's discharge should not be enforceable, and we'd request that the bankruptcy order be reversed. Thank you. Thank you very much. Thank you. Counsel, tell us who you are, who you represent. Glad to, and good morning, and if it pleases the Court, I am Howard Bidna. I am the attorney for Woodlawn Colonial. Woodlawn Colonial wears a number of hats in this case. We are the single largest creditor of this estate. We are the approved, court-approved buyer of the defensive appeal rights. We are also the court-approved buyer of the personal property assets of the estate for which my client paid $75,000, plus waived a priority administrative claim of some $8,000. And when I listened to Mr. Goh, he seems to forget that we started all of this with a no-asset filing by the debtor. And the reason that we're here is because my client has been willing throughout this to put its money where its mouth is, if you will, and step forward to purchase assets which we felt were undervalued in the schedules. My client has stepped forward, and by the way, that sale was approved and was not challenged, it's not on appeal. My client stepped forward to object to an exemption claim of the debtor. The exemption was disallowed, and that also was not appealed. But I want to start my argument this morning by talking about, or just mentioning, in a lengthy record that we have, well-briefed case, there's three lines in the reply brief that the appellant submitted that I think really influence pretty much everything and every issue that we have that's been raised in this appeal. And on page five, lines five through seven of the reply brief, the debtor states, Delanoy is not challenging the bankruptcy court's finding regarding the likelihood of success, primarily because of the difficulty in prevailing on such an argument on appeal. So we have the debtor conceding. Counsel, let me ask you this question, because I think it's the big question, which is, as I understand counsel's argument, it is that it just really is bad public policy to permit a trustee to sell the appellate rights where it implicates the debtor's discharge and fresh start. In other words, public policy is to promote a fresh start. People are permitted to file bankruptcy. And if we're determining dischargeability or non-dischargeability, then that ought to be permitted to play it out. And simply by selling the appellate rights to terminate that litigation is something we shouldn't be doing. Is that what you understand his argument to be? That's exactly what I understand his argument to be, and I think that argument is contrary to established precedent. But more importantly, going to the policy issues, it's only an issue because of that quirk in California law that says that while a judgment is on appeal, it's not final. And so that's why we're here, and that's why we're dealing with it. But it is an asset of the bankruptcy estate that the estate has to admit, that the trustee is an obligation to either abandon or to administer. The reality is that in this case, the court has made a specific finding, a specific ruling, that the sale of the appeal rights does not decide the issue of issue preclusion for non-dischargeability purposes. So Judge Smith, the bankruptcy court, recognized that's an issue and said, no, we're not deciding that. I'm not deciding that today. The debtor has made other arguments that it is not issue preclusion and will be entitled to make those arguments. I can argue it is issue preclusion. He argues that it isn't. The established case law, and I think the public policy is, that if you have met the requirements of both 363 and of 9019, that it's perfectly appropriate. In fact, it's an obligation of the trustee to sell the defensive rights because they are, admittedly, assets of the estate. And here where you have a finding that there is little likelihood of success on the merits of the appeal, the court's findings, the court used the word such as long shot, quote, unquote. Highly unlikely, quote, unquote, were the findings of the court that there would be an appeal, that there would be a reversal or certainly a complete reversal. And so where you have an asset that is essentially worthless, isn't the policy to allow the trustee and encourage the trustee to negotiate with a potential buyer? I mean, what we did here is the usual process. This is the way the system is supposed to work. The trustee has an asset. Buyer expresses an interest. You have a buyer stepping forward. You can call my client a stalking horse. We expected overbidding. There was overbidding. We have a debtor who was perfectly capable of overbidding more and chose not to. This is the way the process is supposed to work. In fact, the trustee did obtain value, significant value, if you look at the fact it was  I don't even know how you do the math. $10,000 versus zero, I don't know what that percentage is. But the policy, I think, is met by exactly what happened in this case. Let's not forget that what happened in this case is we had the, well, the question is ultimately, why not let the debtor prosecute the appeal by paying $9,500, less than my client bid, and doing the appeal for free? That question was posed by the court to trustees' counsel at the hearing. It's specifically in the transcript at docket 19-12, starting on page 63. That specific question was posed. And the trustees' counsel came up with five different reasons. One was the lack of likelihood of success on appeal. The other was the directive given trustees to expedite closing of estates, certainly an important public policy. The third is the additional expense, including bank fees, etc., of delaying the process and the closing and the distribution of the administration for what would undoubtedly be a couple of years. The trustees' counsel also raised a fourth issue having to do with issues involving retaining counsel. There was no application for this Mr. Scharf to be employed as counsel for the estate. And there's some potential liability issues the trustee had concerns having a lawyer who the trustee didn't know, and those kinds of issues. But ultimately, as the court noted, that the real issue here is that, or maybe the overriding issue is that since there's going to be a de minimis, a minimal recovery under any circumstances, the creditors would just as soon get their money now than later. The simple reality is the estate with the approved bid will have about $85,000 in cash. Administrative expenses are about $30,000. The debtor got his money, it's $20,000 or so for his exemption. So there's $35,000 available for distribution to creditors. About $20,000 of that goes to the priority IRS claim, essentially paying the debtor's taxes, tax liability, which leaves about $15,000, rough numbers, to go to unsecured creditors. And the trustees' conclusion was it certainly makes more sense, we believe, that for all of those reasons, and including the fact that somebody who's going to get one cent on the dollar doesn't want to wait around for a couple of years because they might get, what, five cents on the dollar, given that the total distribution is going to be $15,000? The policy of having estates open to do that simply doesn't make sense. Let me also address counsel's argument that the administrative expenses of the sale of the defensive rights exceed what the trustee received, or the approved bid. The brief says that there's about $12,000 of legal fees that were incurred in connection with the sale of the appeal rights. Not so. And if you scrutinize the trustee's fee declaration, which by the way, this is interesting also, maybe a technical point of law, the debtor did not oppose the fee declaration. And if he's really worried about the effect on the creditors, the effect on the body, why didn't he oppose the fee declaration? But the fee declaration, which is record 23, says the total fees incurred for both sales, the real property sale, I'm sorry, not personal property sale, and the sale of the appeal rights was $16,349. Now, rightly or wrongly, the trustee didn't break out that category of quote sale between the two sales. And when I went through and looked at the line item entries on the bills, the actual fees charged by the trustee for the appeal rights sale were $4,493. Now, that is up to the time of the filing of the motion, does not include objections, does not include the hearing. Of course, we had five different motions heard on the same day because the court smartly consolidated and put all the hearings together. But the bottom line is that we have about $5,000 in fees incurred to sell an asset on a stocking horse basis because it's subject to overbid for $7,500. And it ultimately was the argument that, and again, KVN and all that, we've distinguished that in the papers, but the argument that we didn't get enough value for this and therefore it should have been abandoned to the debtor. Of course, the debtor wants it abandoned. The debtor didn't want anything to go to his creditors. He filed a no asset case in the first place. The other thing I want to note is that the debtor stopped the bidding in 1994. The debtor bid $9,500. That was his choice. The record indicates that he has $5,000 a month of disposable income over and above all of his expenses, including entertainment and what have you. It doesn't include his wife's income, $60,000, $70,000 a year. It doesn't include the $20,000 that he received for his exemptions. If the debtor wanted to bid more, which is what the process is, I mean, the best way to figure the value of an asset is what we do all the time in bankruptcy court, which is somebody steps forward, trustee agrees to sell it to that person, and then we have an auction. That's what we have. And if the debtor chose to stop the bidding at $9,500, which he did, I would submit he stuck with that decision. And I would submit that his decision not to bid more, and I was very clear on the record. I said, my client will bid more. Just like I was clear, candid with the bankruptcy court and said, my client's intention is to, if we're the successful bidder, to dismiss the appeal and then bring the preclusion issues back to the bankruptcy court. But we were candid with the court about that. I think that what the debtor has done here is really an attempt to manipulate, in some senses, the bankruptcy process and the bidding process and the procedure that we're using. I think the debtor's arguments on this appeal are really feigning, they're really crocodile tears, feigning an interest for the creditors where he doesn't care about the creditors. He filed a Chapter 7, claimed an exemption that he wasn't entitled to, stopped bidding when he just decided it looked good or it felt good to him. And, of course, he did not object to the attorney's fees motion. I think what we have here, Your Honors, is a reasonable discretion by the trustee, deference given to that discretion by the bankruptcy court. But beyond that, we have a bankruptcy court that really dug deep into this case. We have a long record, it's a thousand plus pages. We have a bankruptcy court that really understood the issues, analyzed the issues, was familiar with the issues, and exercised her discretion properly in approving the sale of the appeal rights to my clients. Unless the Court has any other questions, that would conclude my argument. Thank you, Your Honor. Thank you. Thank you. Just real briefly, just to kind of set the record straight on a couple of points, I think a number of the arguments made by counsel really are irrelevant. When you keep saying they filed a no-asset case, well, the debtors don't file no-asset cases. The debtor files a case and the trustee determined whether or not there's assets and there was no 727 action filed. All assets were disclosed and the like. Your Honor, I think that it goes back to the same point. The record's clear. Regardless of whether or not there was going to be a de minimis distribution of the estate, that's not the focus under KVN and the other decisions from the BAP. It's the issue of whether or not the particular asset is going to provide a meaningful recovery to the estate. And this asset did not provide any recovery to the estate, let alone one that's meaningful. And at the same time, precluded an appeal from going forward and potentially, as Your Honor's pointed out, potentially there's public policy issues with regard to the discharge issue, which Mr. Bidna makes clear that they fully intend to use this final judgment for non-dischargeability purposes. That's all I have, Your Honor. Thank you, counsel. Thank you very much. This matter is deemed submitted.
judges: Kurtz, Lafferty, Spraker